UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL GOLDENBERG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NEOGENOMICS, INC., DOUGLAS VANOORT, MARK MALLON, KATHRYN MCKENZIE, and WILLIAM BONELLO,<br><br>Defendants. | Case No. 1:22-CV-10314-JHR<br><br><u>CLASS ACTION</u> |

**DANIEL GOLDENBERG'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF HIS SELECTION OF COUNSEL**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    A.   Mr. Goldenberg is not subject to unique defenses that render his claims atypical ............ 2

        1.   Purchasing shares after a partial disclosure—as both Mr. Goldenberg and Mr. Caballes did here—is not a disqualifying event ................................................ 2

        2.   Mr. Caballes has presented no evidence that Mr. Goldenberg was not relying on the integrity of NeoGenomics' market price when he purchased his shares ........................................................................................................................ 5

    B.   Shoplifting a compact disc in high school does not make Mr. Goldenberg an inadequate class representative over 25 years later. .......................................................... 7

CONCLUSION ...................................................................................................................... 9

## **TABLE OF AUTHORITIES**

Cases                                                                                                                Page(s)

*Arellano v. Etan Indus., Inc.*,
  No. 97-cv-8512, 1998 WL 417599 (N.D. Ill. July 20, 1998) ...................................................... 9

*Chauhan v. Intercept Pharms.*,
  No. 21-cv-00036, 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ................................................... 7

*City Pension Fund for Firefighters & Police Officers in the City of Miami Beach v.
  Aracruz Cellulose S.A.*,
  No. 08-cv-23317, 2009 WL 10664427 (S.D. Fla. Aug. 7, 2009) ............................................... 6

*Cook v. Allergn PLC*,
  No. 18-cv-12089, 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ............................................... 8

*Faris v. Longtop Fin. Techs. Ltd.*,
  No. 11-cv-3658, 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) .................................................... 6

*Gilbert v. Azure Power Glob. Ltd.*,
  No. 22-cv-7432, 2022 WL 17539172 (S.D.N.Y. Dec. 8, 2022) ................................................. 8

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-cv-1825, 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) ................................................... 5

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  288 F.R.D. 26 (S.D.N.Y. 2012) .............................................................................................. 4, 7

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
  No. 20-cv-4420, 2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020) ............................................ 6, 7

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015) ........................................................................................ 6

*In re VEON Ltd. Sec. Litig.*,
  No. 15-cv-8672, 2022 WL 1284547 (S.D.N.Y. Apr. 29, 2022) ................................................. 4

*McIntire v. China MediaExpress Holdings, Inc.*,
  38 F. Supp. 3d 415 (S.D.N.Y. 2014) .......................................................................................... 5

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................................................... 9

*Roofers' Pension Fund v. Papa*,
  No. 16-cv-2805, 2017 WL 1536222 (D.N.J. Apr. 27, 2017) ................................................. 5, 6

*Schleicher v. Wendt*,
    No. 02-cv-1332, 2009 WL 761157 (S.D. Ind. Mar. 20, 2009) ...................................................... 8

*Silverberg v. DryShips Inc*.,
    No. 17-cv-4547, 2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018) ............................................... 9

*Sjunde AP-Fonden v. Gen. Elec. Co*.,
    341 F.R.D. 542 (S.D.N.Y. 2022) ........................................................................................ 5

*Sneed v. AcelRx Pharms., Inc*.,
    No. 21-cv-04353, 2021 WL 5964596 (N.D. Cal. Dec. 16, 2021) ................................................ 8

*Villare v. ABIOMED, Inc*.,
    No. 19-cv-7319, 2020 WL 3497285 (S.D.N.Y. June 29, 2020) .................................................. 8

*Wentworth v. Metrodata Servs., Inc*.,
    No. 17-cv-594, 2020 WL 13527954 (W.D.N.Y. Nov. 9, 2020) ................................................. 8

*Xianglin Shi v. Sina Corp*.,
    No. 05-cv-2154, 2005 WL 1561438 (S.D.N.Y. July 1, 2005) ....................................................... 8

Other Authorities

7 *Newberg and Rubenstein on Class Actions* § 22:72 (6th ed.) ....................................................... 5

## INTRODUCTION

Two different shareholders of NeoGenomics, Inc., have applied to serve as Lead Plaintiff in this securities fraud case: Daniel Goldenberg, who lost $174,591 as a result of the alleged fraud, and Edilbert Caballes who lost $52,870. *See* ECF Nos. 11, 15. Mr. Caballes acknowledges that under the PSLRA, Mr. Goldenberg is considered the presumptive Lead Plaintiff but submits that Mr. Goldenberg should be disqualified because he purchased his shares after the first of three partial disclosures. Mr. Caballes's own counsel has previously explained, however, that "courts overwhelmingly hold that purchasing shares after a partial corrective disclosure (but before the disclosure of the actual fraud) is not disqualifying." *Schneider v. Champignon Brands Inc.*, No. 21-cv-03120, ECF No. 27 at 3 (C.D. Cal. June 28, 2021). Mr. Goldenberg purchased his shares during the six-month period after Defendant NeoGenomics announced an internal investigation but before its CEO resigned and the company's claims of a comprehensive panel of cancer tests, fixed cost structure, and robust compliance program were revealed to be false. Many other proposed class members likewise purchased during this same time period—including Mr. Caballes—and so there is no real risk that the timing of Mr. Goldenberg's purchase will subject him to a unique defense that does not also apply to other class members.

Mr. Caballes also seeks to disqualify Mr. Goldenberg based on the erroneous contention that Mr. Goldenberg's "background appears to include multiple criminal offenses." Caballes Opp. at 2 (ECF No. 22). In baselessly disparaging Mr. Goldenberg, Mr. Caballes does not offer any proof that Mr. Goldenberg was convicted of a disqualifying criminal offense, even as he likens Mr. Goldenberg to convicted felons who were disqualified for engaging in criminal fraud. In reality, the only conviction in Mr. Goldenberg's past is for shoplifting a compact disc in **high school**, some 25 years ago. Many courts have concluded that minor, unrelated allegations of

1

wrongdoing are insufficient to render a proposed class representative inadequate. Mr. Goldenberg respectfully submits that the same conclusion is warranted here.

As Mr. Caballes has not presented proof sufficient to rebut the PSLRA's presumption that the party with the largest financial interest should serve as the Lead Plaintiff, Mr. Goldenberg respectfully requests that the Court grant his application, appoint him as Lead Plaintiff and approve of his selection of Lead Counsel.

## ARGUMENT

**A. Mr. Goldenberg is not subject to unique defenses that render his claims atypical.**

    **1. Purchasing shares after a partial disclosure—as both Mr. Goldenberg and Mr. Caballes did here—is not a disqualifying event for a presumptive Lead Plaintiff.**

In a recent Lead-Plaintiff motion, Mr. Caballes's counsel successfully argued that the presumptive lead plaintiff "is not subject to unique defenses merely because he purchased after the first partial disclosure." *Ciccarello v. Alibaba Grp. Holding Ltd.*, No. 20-cv-09568, ECF No. 30 at 3 (S.D.N.Y. Feb. 2, 2021) (cleaned up). They characterized the competing applicant's contention otherwise as a "clear attempt to circumvent the PSLRA." *Id.* at 8. But Mr. Caballes, through that same counsel, is now making that very contention himself: he says Mr. Goldenberg is subject to unique defenses merely because he purchased his shares after the first of three partial disclosures. Caballes Opp. at 2-5 (ECF No. 22).

As set forth in the class action complaint that Mr. Goldenberg filed—which is the only complaint filed by a NeoGenomics' shareholder in this matter—the fraud at issue was gradually revealed to the market through three incremental disclosures issued by NeoGenomics between November 4, 2021, and the close of the Class Period on April 27, 2022:

    (1) *November 4, 2021*: NeoGenomics announced it was conducting an internal investigation into the company's compliance with federal laws relating to fraud, waste, and abuse.

Compl., ¶ 7 (ECF No. 1).  This disclosure raised the possibility that the Company's claims of a robust compliance program were false or misleading and NeoGenomics' stock dropped 17.6% on the news. *See id.*, ¶¶ 5, 7.

(2) *March 28, 2022*: NeoGenomics announced its CEO was stepping down, effective immediately, and that the Company was now expecting a larger quarterly loss than previously stated, in part due to increased costs. *Id.*, ¶ 9. This disclosure was contrary to prior claims that the Company possessed a comprehensive menu of cancer tests and fixed cost structure, and that investors could therefore expect profitability to improve as revenue increased. *Id.*, ¶¶ 4-5. And it seemingly confirmed that the Company had indeed engaged in fraud, waste, and abuse. NeoGenomics' stock dropped 29.8% in response to this disclosure. *Id.*, ¶ 9

(3) *April 27, 2022*: NeoGenomics reported a loss of $19 million for the quarter and further disclosed the reasons for its poor performance, including that it used antiquated tests that were not as comprehensive as its competitors' tests. *Id.*, ¶ 11. Like the March 28th disclosure, this revelation was contrary to the company's prior claims that its comprehensive menu of cancer tests and fixed cost structure were competitive advantages. NeoGenomics' stock dropped further in response to this additional detail. *Id.*

Mr. Goldenberg purchased his shares on March 8, 2022: after the first partial disclosure, when the possibility of fraud was first raised, but before the latter two disclosures, when the fraud was confirmed and the company admitted that in reality it lacked a comprehensive panel of cancer tests and fixed cost structure. ECF No. 13-3. Mr. Caballes likewise purchased many of his shares during this six-month time period, as did many other class members. ECF No. 17-3. NeoGenomics, for its part, was continuing to misrepresent its testing capabilities, fixed cost structure, and robust

compliance program throughout this time period—causing Mr. Goldenberg, Mr. Caballes, and many other investors to purchase its stock at inflated prices. *See* Compl., ¶¶ 4-5, 50-53

Nevertheless, Mr. Caballes erroneously contends Mr. Goldenberg is subject to a unique reliance defense due to his purchase of NeoGenomics shares after the November 2021 partial disclosure, and claims that unique defense renders his claims atypical. Caballes Opp. at 1, 2-5. "[B]ut courts have frequently found that the purchase of a stock after a partial disclosure does not bar a plaintiff from satisfying the typicality requirement." *In re VEON Ltd. Sec. Litig.*, No. 15-cv-8672, 2022 WL 1284547, at *5–6 (S.D.N.Y. Apr. 29, 2022) (rejecting argument that investor who "purchased his shares after three of the five partially corrective disclosures" had an atypical claim and citing cases); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 38 (S.D.N.Y. 2012) ("[c]ourts have consistently rejected the argument that post-disclosure purchases preclude a proposed class representative from meeting Rule 23(a) requirements...."). Mr. Caballes's counsel has agreed with this legal principle in at least two other lead-counsel motions, recognizing that "courts overwhelmingly hold that purchasing shares after a partial corrective disclosure (but before the disclosure of the actual fraud) is not disqualifying." *Schneider*, No. 21-cv-03120, ECF No. 27 at 3; *see also Ciccarello*, No. 20-cv-09568, ECF No. 30 at 3-10.

The reason that Mr. Goldenberg's purchase of NeoGenomics shares after the November 2021 partial disclosure does not preclude him from serving as a lead plaintiff is that "there is nothing unique about his situation." *In re VEON*, 2022 WL 1284547, at *6. Many members of the class—including Mr. Caballes—purchased NeoGenomics shares after the November 2021 disclosure but before the March and April 2022 disclosures. If NeoGenomics were to argue that this means they could not have relied on the integrity of the market price, that reliance defense would not be unique to Mr. Goldenberg—it would also apply to Mr. Caballes and to many other

4

class members as well. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2008 WL 820015, at *3 (E.D.N.Y. Mar. 25, 2008) ("[T]he court is not convinced that this defense is a 'unique' defense within the meaning of the PSLRA.").

Mr. Goldenberg and Mr. Caballes both purchased their shares within the Class Period—during which time, NeoGenomics' share price was inflated by false and misleading representations made by Defendants. Both relied on the integrity of the market price and both were injured when the truth about the Company was fully disclosed—causing the market price of their respective holdings to tumble. Both therefore have claims typical of the proposed class and qualify to serve as class representatives. *See Sjunde AP-Fonden v. Gen. Elec. Co.*, 341 F.R.D. 542, 548 (S.D.N.Y. 2022) (finding argument that plaintiff could not represent the class because some class members purchased before a partial corrective disclosure and others after to be "wholly unpersuasive"). Or as Mr. Caballes's counsel put it in *Schneider*, "Certainly, a class member purchasing shares during the class period, and then holding those shares over the final corrective disclosure is typical." *Schneider*, No. 21-cv-03120, ECF No. 27 at 7.

2. **Mr. Caballes has not even attempted to rebut the presumption that Mr. Goldenberg was relying on the integrity of NeoGenomics' market price when he purchased his shares.**

Because all investors are presumed to have relied on the integrity of the market price, it is "exceedingly rare" for a reliance defense to succeed. *Roofers' Pension Fund v. Papa*, No. 16-cv-2805, 2017 WL 1536222, at *6 (D.N.J. Apr. 27, 2017). And when a reliance defense is raised, it is unlikely to be unique to the named plaintiff and to "threaten to become the focus of the litigation such that Plaintiffs would inadequately represent the class." *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 425 (S.D.N.Y. 2014); 7 *Newberg and Rubenstein on Class Actions* § 22:72 (6th ed.) ("Cases hitting that mark are infrequent.").

5

The few cases that Mr. Caballes cites as examples where a presumptive Lead Plaintiff has been disqualified are facially distinguishable from the facts involving this Lead Plaintiff contest. For example, in the *Petrobras* case, the court disqualified the presumptive Lead Plaintiff primarily because it was a lawyer-driven "artificial grouping designed merely to qualify as lead plaintiff under the PSLRA." *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015); *see also Roofers' Pension*, 2017 WL 1536222 at *6 (warning that "the statements in *Petrobas* must be read in context," since a combination of issues undid the presumptive lead plaintiff). One of the firm's public statements about its investments, combined with the timing of its trades, also indicated that it had "relied on its own valuation of Petrobras securities, and not on their market price." *Petrobras*, 104 F. Supp. at 623.

The other cases that Mr. Caballes cites are similar. In the *Faris* case, a hedge fund, which was not the presumptive Lead Plaintiff, had been implicated in a $1.4 billion Ponzi scheme (fund executives would later be arrested and convicted). And the strategic timing of the hedge fund's purchases undermined their ability to assert the fraud-on-the-market presumption of reliance. *Faris v. Longtop Fin. Techs. Ltd.*, No. 11-cv-3658, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011). In the *City Pension* case, the court was concerned about the applicant's ability to supervise the litigation from Brazil and noted the unsuccessful applicant had made its largest purchase only hours after a major corrective disclosure, suggesting it was not relying on the integrity of the market price. *City Pension Fund for Firefighters & Police Officers in the City of Miami Beach v. Aracruz Cellulose S.A.*, No. 08-cv-23317, 2009 WL 10664427, at *4 (S.D. Fla. Aug. 7, 2009). Lastly, the *Hebron* case involved an investor who first began purchasing shares as the company was disclosing the fraud in a streaming virtual investor conference, and who sold the shares the very next day—indicating the investor was not relying on the integrity of the market price and was

6

instead betting against it. *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-cv-4420, 2020 WL 5548856, at *8 (S.D.N.Y. Sept. 16, 2020).

Unlike the cases cited by Mr. Caballes, there is no indication here that Mr. Goldenberg was acting based on non-public information or executing suspiciously timed trades during or shortly after a major corrective disclosure. Mr. Goldenberg is an ordinary investor who purchased his shares weeks before NeoGenomics' CEO resigned, and the Company corrected prior representations that it was in a strong competitive position due to a comprehensive panel of cancer tests, a fixed cost structure, and robust compliance program. There is not a shred of evidence that Mr. Goldenberg was relying on anything other than the integrity of NeoGenomics' market price— just like the many other class members who unknowingly purchased the same stock at fraudulently inflated prices. *See Chauhan v. Intercept Pharms.*, No. 21-cv-00036, 2021 WL 235890, at *6 (S.D.N.Y. Jan. 25, 2021) (declining to disqualify presumptive lead plaintiff "[a]bsent evidence that [he] did not rely on the integrity of the market price"); *In re Facebook*, 288 F.R.D. at 39 (finding competing applicant's "contentions fail to meet the exacting proof standard required under the PSLRA to demonstrate that [the presumptive lead plaintiff's] claims are atypical").

**B.    Shoplifting a compact disc in high school does not make Mr. Goldenberg an inadequate class representative over 25 years later.**

Mr. Caballes also seeks to disqualify Mr. Goldenberg due to a supposed "history of criminal offenses that cast doubt on his ability to adequately represent the class." Opp. at 5 (cleaned up). Mr. Caballes goes so far as to disparage Mr. Goldenberg by likening him to several convicted felons who pled or were convicted of: (i) defrauding Medicaid (leading to the revocation of a

7

pharmacist license);[1] (ii) providing false information to a financial institution;[2] (iii) participating in criminal insurance fraud;[3] and (iv) embezzling over $900,000 from his employers.[4]

Even though "[c]ourts in this Circuit have required 'exacting proof' to disqualify the presumptive lead plaintiff," Mr. Caballes does not submit proof that Mr. Goldenberg has ever been convicted of criminal fraud or any other felony. *Gilbert v. Azure Power Glob. Ltd.*, No. 22-cv-7432, 2022 WL 17539172, at *4 (S.D.N.Y. Dec. 8, 2022). The truth is that Mr. Goldenberg has never been convicted of a felony and has only a single misdemeanor conviction on his record—for shoplifting a CD when he was in high school over 25 years ago. Supp. Goldenberg Decl., ¶ 4. He regrets that mistake but has long since overcome that youthful indiscretion to become a responsible and dedicated husband, father, and successful small business owner. *Id.*, ¶¶ 4, 7.

Mr. Goldenberg's prior shoplifting conviction is exactly the type of "minor, unrelated allegations of wrongdoing" that courts have found insufficient to render a proposed class representative inadequate. *Wentworth v. Metrodata Servs., Inc.*, No. 17-cv-594, 2020 WL 13527954, at *6 (W.D.N.Y. Nov. 9, 2020). In fact, counsel has been unable to locate a single case where a proposed class representative was found inadequate or disqualified from lead-plaintiff consideration due to a misdemeanor conviction. When confronted with evidence of two prior misdemeanor convictions in one recent Lead-Plaintiff motion, Judge McMahon observed that neither conviction "has the slightest relevance to the court's lead plaintiff analysis, except insofar as they demonstrate the depths to which lawyers will descend in an effort to become lead counsel in a PSLRA case." *Cook v. Allergn PLC*, No. 18-cv-12089, 2019 WL 1510894, at *2, n.1

---

[1] *Villare v. ABIOMED, Inc.*, No. 19-cv-7319, 2020 WL 3497285, at *7 (S.D.N.Y. June 29, 2020).
[2] *Xianglin Shi v. Sina Corp.*, No. 05-cv-2154, 2005 WL 1561438, at *4 (S.D.N.Y. July 1, 2005).
[3] *Schleicher v. Wendt*, No. 02-cv-1332, 2009 WL 761157, at *3 (S.D. Ind. Mar. 20, 2009).
[4] *Sneed v. AcelRx Pharms., Inc.*, No. 21-cv-04353, 2021 WL 5964596, at *4 (N.D. Cal. Dec. 16, 2021).

(S.D.N.Y. Mar. 21, 2019); *see also Arellano v. Etan Indus., Inc.*, No. 97-cv-8512, 1998 WL 417599, at *2 (N.D. Ill. July 20, 1998) (finding misdemeanor shoplifting conviction did not undermine plaintiff's credibility or make him an inadequate class representative); *Silverberg v. DryShips Inc.*, No. 17-cv-4547, 2018 WL 10669653, at *10 (E.D.N.Y. Aug. 21, 2018) (finding misdemeanor arrest was not germane to the action and did not call into question plaintiff's adequacy to serve as lead plaintiff).

Mr. Caballes suggests Mr. Goldenberg may have also been convicted of passing bad checks. Caballes Opp. at 5. But Mr. Caballes does not, and cannot, present any evidence that Mr. Goldenberg was convicted of passing bad checks. In truth, the charges referenced in Mr. Caballes's LexisNexis search were dismissed. Supp. Goldenberg Decl., ¶¶ 5, 7, Ex. A. While in college over twenty years ago, Mr. Goldenberg had recently switched banks and accidentally wrote a single $68 check at Walmart from his old bank's checkbook rather than from the new one. *Id.*, ¶ 6. After learning of his error, Mr. Goldenberg paid what he owed. *Id.* But due to a computer error, he was mistakenly arrested in another county a few years later. *Id.*, ¶ 7. The court, however, quickly realized the mistake and promptly dismissed the charges. *Id.*, ¶ 7, Ex. A. Mr. Goldenberg has never intentionally written a bad check, and with no such wrongdoing "actually proven or otherwise established on the record," it would not be appropriate to reject Mr. Goldenberg's Lead Plaintiff candidacy on that basis. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 416 (S.D.N.Y. 2004).

## CONCLUSION

For the reasons discussed above and in his opening brief, Mr. Goldenberg respectfully requests that the Court appoint him to serve as Lead Plaintiff and approve his selection of Gibbs

Law Group as Lead Counsel. Mr. Goldenberg is the presumptive Lead Plaintiff under the PSLRA and Mr. Caballes has not presented the sort of exacting proof required to rebut that presumption.

Dated:  February 28, 2023                                   Respectfully Submitted,

/s/ *Adam J. Levitt*
Adam J. Levitt
Bruce D. Bernstein
**DICELLO LEVITT LLC**
485 Lexington Avenue, Suite 1001
New York, New York 10017
Telephone: (646) 933-1000
Facsimile:  (646) 494-9648
alevitt@dicellolevitt.com
bbernstein@dicellolevitt.com

*Local Counsel for Proposed Lead Plaintiff Daniel Goldenberg*[5]

David Stein (*pro hac vice* forthcoming)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ds@classlawgroup.com

*Lead Counsel for Proposed Lead Plaintiff Daniel Goldenberg*

---

[5] Mr. Goldenberg has elected to work with DiCello Levitt LLC as local counsel in this matter, a 60+ attorney firm that includes attorneys who have vast experience litigating securities class actions and other complex suits against corporate defendants. This local counsel change (from the initially retained local counsel firm) does not impact the pending Lead Plaintiff motion, as the PSLRA requires approval of "Lead Counsel" (and not approval of both "Lead Counsel" and "Local Counsel"); for that reason neither Mr. Goldenberg's pending motion nor the proposed order seek approval of his selection of local counsel. ECF Nos. 11 and 14; *see also* 78u-4(a)(3)(B)(v) ("Selection of **lead** counsel. The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.") (emphasis added).